UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| A.S., DAVID SPEIRS, & MICHELLE SPEIRS, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL KARTING ALLIANCE, INC., JOSEPH JANOWSKI, President of National Karting Alliance, Inc. in his official and individual capacities, NORTHWEST KARTING ASSOCIATION, MICHAEL SCHORN, President of Northwest Karting Association, in his official and individual capacities, WILLIAM ROBERT WEBER, & JAMES BENHAM, in his official and individual capacity as Chief Executive Officer of Padholder, LLC <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT AND WASHINGTON LAW AGAINST DISCRIMINATION** |

Complaint for Declaratory and Injunctive
Relief - 1

## INTRODUCTION

1.1    Plaintiff A.S. is twelve years old and has been diagnosed with autism, attention deficit hyperactivity disorder (ADHD), anxiety, and depression that has worsened from the ban that Defendants imposed on him and his family.

1.2    As an individual with disabilities, A.S. is protected from discrimination based on disability under the Americans with Disabilities Act (ADA) and the Washington Law Against Discrimination (WLAD), because his disabilities substantially limit the major life activity of communicating.

1.3    A.S. frequently participates in kart racing events. These races include competitions hosted by Defendant Northwest Karting Association (NWKA) and sanctioned by Defendant National Karting Alliance (NKA). Since 2023, the Speirs family has had multiple verbal and written discussions with Michael ("Mike") Schorn, the president of NWKA, surrounding the diagnosis of autism spectrum disorder (ASD) of A.S. and his need for reasonable accommodations while kart racing.

1.4    At the same time, A.S. has been subjected to years of verbal and physical abuse from his peers, including those who participated with A.S. at these events, as well as school and other social events. This abuse has amounted to lasting trauma on A.S. and his parents, and A.S. relies on support from his parents because of the numerous incidents of bullying and abuse that he has faced.

Complaint for Declaratory and Injunctive
Relief - 2

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

1.5    On April 5, 2025, A.S. participated in the Burly Super Cup, hosted by NWKA and sanctioned by NKA.[1]

1.6    Shortly before the Junior 1 206 pre-final race of the Burly Super Cup began, A.S. overheard conflicting verbal dialogue between NWKA officials that eventually amounted to disqualifying A.S. after A.S. allegedly committed a violation just seventeen minutes before the Junior 1 206 pre-final race started.[2]

1.7    NWKA officials provided conflicting and inconsistent information that caused A.S.—an individual with autism, ADHD, anxiety, and a history of emotional and physical abuse—to experience substantial emotional dysregulation and psychological distress. This distress began immediately before the race and

---

[1] On information and belief, this particular NWKA Super Cup event was previously sponsored by Padholder, LLC in 2023 and 2024 and was thus known in those years as the Padholder Super Cup.

[2] On information and belief, participants in the Super Cup who are "disqualified" could still race in the event, but that participants would be moved to the back of the starting position behind all other participants who did not receive a "disqualification."

Complaint for Declaratory and Injunctive Relief - 3

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

arose directly from A.S.'s neurodiverse condition and associated disabilities, which staff at NWKA knew or should have known about.

1.8     During the race, A.S. spun out of the racetrack while turning along the track and left the racecourse onto the surrounding grass. A corner worker holding a large metal hook approached him. The presence of the hook further triggered and made A.S fear for his life.

1.9     After A.S. attempted to push his kart back to the racetrack to reenter the race, the first corner worker pulled the kart away from the track, a response that neither A.S. nor his parents had experienced or witnessed in any previous spinouts in any other races. In fact, A.S. reasonably assumed that he could reenter the track with his still drivable kart – receive assistance by corner workers to do so – and continue racing. It is typical for members of his racing class to be allowed to be assisted back on track to continue racing, if the kart is still drivable. Yet, the corner worker who pulled A.S. provided no adequate reason for taking A.S. out at that moment. This further triggered A.S., who then kicked towards the corner worker in intense distress over the situation.

1.10    Another corner worker, holding a large wooden flagpole, arrived and attempted to intervene by restraining A.S., who then kicked her, as well. At one point during this physical restraint, the first corner worker also restrained A.S. by

wrapping his arms around the neck, arms, and upper torso of A.S. A.S. then collapsed onto the ground and cried.

1.11   On April 18, 2025, NKA, who sanctioned the Burly Super Cup, issued a "Penalty Notice" that banned A.S. from participating in any NKA-sanctioned events until April 17, 2027.

1.12   NKA also notified A.S. and his parents that the decision to ban A.S. was final, neither A.S. nor his parents could litigate against the ban, and if they choose to involve NKA as a party in any legal proceedings at all, NKA would make A.S. and his parents pay all legal fees and costs.

1.13   On April 26, 2025, A.S. and his parents appealed the two-year ban and sought to reduce the scope to include only events organized by NWKA, not all NKA-sanctioned events entirely. NKA sanctions karting events across the country, and A.S. has competed in many NKA-sanctioned events previously. NKA never provided any response.

1.14   Plaintiff A.S., by and through his parents and attorneys, brings this action against NWKA and NKA for violations of his rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and the Washington Law Against Discrimination, RCW § 49.60.030. The conduct that led to A.S.'s exclusion constituted manifestations of his disabilities, not willful or malicious behavior. The resulting ban did not sufficiently consider accommodations for

Complaint for Declaratory and Injunctive
Relief - 5

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

A.S.'s disability. This ban constitutes unlawful discrimination on the basis of disability under both federal and state law.

## JURISDICTION AND VENUE

2.1     This action arises under the laws of the United States and is brought pursuant to 28 U.S.C. § 12182. Jurisdiction is conferred upon this court under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343(a)(3)-(4).

2.2     The court also has supplemental jurisdiction over A.S.'s state law claims pursuant to Washington's Law Against Discrimination, RCW 49.60, pursuant to 28 U.S.C. § 1367, because these state law claims are "so related to [the] claims in the action within such original jurisdiction."[3]

2.3     Venue in this court is proper pursuant to 28 U.S.C. § 1391(b)(2), as all substantial events giving rise to the claims occurred in Benton County, Washington, a county located within the geographical boundaries of this judicial district.

---

[3] 28 U.S.C. § 1367(a).

Complaint for Declaratory and Injunctive Relief - 6

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

## PARTIES

3.1    A.S. is a Plaintiff in this action. At all times relevant to this action, A.S. is a resident of King County, Washington, a county located in this judicial district.

3.2    A.S. is twelve years old and was diagnosed with autism, ADHD, depression, and anxiety.

3.3    As a result of his diagnosed disabilities, A.S. is "substantially limited" in one or more major life activities, including communicating.[4]

3.4    A.S. is an individual with a disability under the ADA and Washington Law Against Discrimination (WLAD) and is entitled to the protections afforded to individuals with disabilities under the ADA and WLAD.[5]

---

[4] 42 U.S.C. § 12102(2)(A). Major life activities also include major bodily functions. *Id.* § 12102(2)(B).

[5] See WASH. REV. CODE § 49.60.040(7)(a)(i) (stating that "disability" under WLAD includes "the presence of a sensory, mental, or physical impairment," including impairments that are "medically cognizable or diagnosable").

Complaint for Declaratory and Injunctive
Relief - 7

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

3.5     A.S. participates frequently in kart races and has participated in numerous local, regional, and national events over the past three years. He has participated in several NWKA and NKA-sanctioned events in the past.

3.6     Plaintiff David Speirs is the father of A.S. Mr. Speirs has participated in kart racing events for at least the last two decades.

3.7     Plaintiff Michelle Speirs is the mother of A.S.

3.8     Defendant NKA is "one of the largest sanctioning organizations" in kart racing "with over 300 facilities, series, and events using [NKA's] programs."[6] One of these programs is the Burly Super Cup, hosted by Defendant NWKA but sanctioned by NKA. NKA has a principal address in Noblesville, IN.

3.9     Defendant Joseph ("Joe") Janowski is the President and Chief Executive Officer of NKA, a position he has held at all relevant times. On information and belief, Mr. Janowski oversees NKA's Appeals Committee and disciplinary boards. Mr. Janowski personally signed the Penalty Notice imposing a two-year racing ban on the plaintiff, thereby authorizing the disciplinary action at issue in this case.

---

[6] About, Nat'l Karting All., https://www.nkaonline.com/about-1 (last visited May 22, 2025).

Complaint for Declaratory and Injunctive Relief - 8

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

3.10   Defendant William ("Billy") Robert Weber is an individual whose daughter participated in and competed against A.S. in many kart racing events hosted by Defendant NWKA, including NWKA-hosted events sanctioned by NKA. On information and belief, Mr. Weber has a history of suspensions and other sanctions that arose from abusive behavior against plaintiff A.S. and his parents, including shouting disparaging statements with profanity against A.S., his parents, and other participants.

3.11   Defendant James ("Jimmy") Benham is an individual whose son also participated in and competed against A.S. in many kart racing events sanctioned by NKA. Mr. Benham has also allegedly made disparaging remarks against A.S. and his parents, along with collecting and disseminating information about other incidents involving A.S. and his parents at other racetracks sanctioned by NKA. On information and belief, Mr. Benham was (and is still) the CEO of Padholder, LLC, the title sponsor of the Super Cup at the time he allegedly made those disparaging remarks.

3.12   Defendant Northwest Karting Association, Inc. ("NWKA") "is the longest standing organization in the Pacific Northwest" for kart racing and includes several clubs, including the Tri City Kart Club where the Burly Super Cup and the

events giving rise to this action occurred.[7] NWKA has a principal address based in Banks, OR.

3.13    Defendant Michael Schorn is the President of Defendant NWKA, a position that he has held at all relevant times during this action. Mr. Schorn has interacted with A.S. and his family over the past three years and has known A.S. to have a disability. Mr. Schorn has also held responsibilities that included enforcing penalties by Defendant NWKA, yet Mr. Schorn has failed to consistently enforce penalties against participants and their family members who verbally or physically abuse participants like A.S. and his parents.

## FACTS

4.1    A.S. incorporates by reference the prior paragraphs herein.

4.2    The ADA imposes a general rule that no one with a disability "shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."[8]

---

[7] About Us, Northwest Karting Ass'n, https://www.nwkasupercup.com/pages/about (last visited May 22, 2025).

[8] 42 U.S.C. § 12182(a).

Complaint for Declaratory and Injunctive Relief - 10

4.3     Congress passed and enacted the ADA in 1990, after Congress found that individuals with disabilities have historically faced discrimination in society.[9] Congress statutorily declared this form of discrimination as a "serious and pervasive social problem."[10]

4.4     Congress also acknowledged explicitly that discrimination has "persist[ed]" in "critical areas," such as recreation.[11]

4.5     Further, Congress addressed "the discriminatory effects of architectural . . . barriers . . . [and] overprotective rules and policies," among other factors that contribute to the ongoing exclusion against people with disabilities.[12]

4.6     One form of this exclusion against people with disabilities is the failure to reasonably modify policies or procedures that do not fundamentally alter the privileges afforded by an entity.[13]

---

[9] 42 U.S.C. § 12101(a)(2).

[10] Id.

[11] 42 U.S.C. § 12101(a)(3).

[12] 42 U.S.C. § 12101(a)(5).

[13] 42 U.S.C. § 12182(b)(1)(A)(i).

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.7    Another form of exclusion against people with disabilities is the implementation of facially neutral policies that disproportionately impact people with disabilities.[14]

4.8    A third form of this exclusion is retaliating against individuals with disabilities who oppose an entity's discriminatory practices, policies, or procedures.[15]

4.9    Accordingly, Congress sought to "clear[ly] and comprehensive[ly]" eradicate discrimination against people with disabilities.[16]

---

[14] This is referred to as disparate impact, i.e., that facially neutral policies violate the ADA when these policies disproportionately impact people with disabilities. Payan v. L.A. Cmty. Coll. Dist., 11 F.4th 729, 735 (9th Cir. 2021).

[15] See 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").

[16] 42 U.S.C. § 12101(b)(1)–(2).

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.10   Autistic individuals are among those protected from discrimination under the ADA and WLAD, because individuals who are diagnosed with the condition are substantially limited in the major life activity of communicating.

4.11   Particularly, many autistic individuals face deficits in communicating with peers, manifested by deficits in maintaining social interactions and direct eye contact, exhibiting abnormal body language, inability to adjust behavior to different social situations, and deficits in understanding and using bodily gestures intended to communicate.[17]

4.12   In addition to deficits in communication, many autistic individuals also show restricted or repetitive behavioral patterns or tendencies, including, among other things, "insistence on sameness, inflexible adherence to routines, or ritualized patterns of verbal or nonverbal behavior," the disruption of which may trigger "extreme distress at small changes, difficulties with transitions, [or other] rigid thinking patterns."[18]

---

[17] Diagnostic and Statistical Manual of Mental Disorders, DSM-5-TR 56 (5th ed. 2022), https://www.mredscircleoftrust.com/storage/app/media/DSM%205%20TR.pdf.

[18] Id. at 57.

Complaint for Declaratory and Injunctive
Relief - 13

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.13    Additionally, many autistic individuals may also experience sensory sensitivities in the form of "hyper- or hyporeactivity to sensory input," according to DSM-5 diagnostic criteria.[19]

4.14    As of filing this Complaint, as many as 1 in 8 children between the ages of four and eight have been diagnosed with autism spectrum disorder (ASD) in the United States.[20] One of them is Plaintiff A.S., bringing this suit by and through his parents, David and Michelle Speirs (collectively "Plaintiffs").

4.15    A.S. was first diagnosed with ASD on August 4, 2020.[21]

---

[19] Id.

[20] Data and Statistics on Autism Spectrum Disorder, Ctrs. For Disease Control, Apr. 15, 2025, https://www.cdc.gov/autism/data-research/index.html (last visited May 21, 2025).

[21] A.S. was also diagnosed with attention-deficit hyperactivity disorder (ADHD) and Anxiety on August 4, 2020. These two conditions may amplify behavioral traits exhibited by autistic individuals. This includes, among other things, impulsivity in ADHD and its effects on social interaction by autistic individuals, as well as increased feelings of "anxiety," "worry" or "physical symptoms" causing "clinically significant distress or impairment in social, occupational, or other

4.16   As a result of his diagnosed disabilities, A.S. is substantially limited in the major life activity of communicating, including, among other things, his ability to handle and interpret social cues when interacting with others.

4.17   In addition to these impacts as an individual with these disabilities, A.S. is susceptible to emotional dysregulation, intense distress, and sensory overload, consistent with signs of ASD and as corroborated by two medical professionals who have known A.S. for years.

4.18   In various social environments, A.S. has and continues to endure years of bullying that manifested in verbal and physical abuse. This includes peers – consisting of other children and even their parents – verbally shouting insults and threats at A.S., as well as multiple incidents where other children threw rocks at A.S.

---

important areas of functioning" from anxiety, paired with distress associated with changes in routine for autistic individuals. See Diagnostic and Statistical Manual of Mental Disorders, DSM-5-TR 250 (5th ed. 2022), https://www.mredscircleoftrust.com/storage/app/media/DSM%205%20TR.pdf; id. at 69; id. at 56.

Complaint for Declaratory and Injunctive
Relief - 15

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.19   Despite such a history of verbal and physical abuse inflicted on A.S., A.S. has never retaliated against these perpetrators of this abuse, nor has any medical professional ever regarded A.S. as aggressive or found any signs that he ever lost control in school.

4.20   Nevertheless, this level of bullying led A.S. and his parents to feel unsafe and contributed to substantial and profound trauma. These events have also led A.S. to complete suicide screenings, stay home from school, and undergo trauma-based therapy as a result of these abuses.

4.21   Within the karting world, A.S. and his parents have only experienced bullying or abuse at Super Cup events hosted by NWKA. A.S. and his parents have experienced a far more supportive environment in non-NWKA Super Cup events.

4.22   Over the three years that A.S. has participated in kart racing, NWKA participants and their families have bullied A.S. This includes Mr. Weber, among other participants, who mocked A.S. through posts and comments on Facebook and has verbally shouted insults and inflicted verbal abuse against A.S. on multiple occasions at kart racing events sanctioned by NKA, dating back to 2023.

Complaint for Declaratory and Injunctive
Relief - 16

4.23   Mr. Weber has consistently engaged in verbal abuse that targeted A.S., his parents, and even other participants.[22] For example, on information and belief, Mr. Weber allegedly shouted, "take him out" and "run him off," with "him" referring to A.S. during another NWKA-sanctioned event called the Sima Super Cup on August 5, 2023, in Sumas, WA. Further, during another NWKA event in April 2024, also sanctioned by NKA, Mr. Weber allegedly committed "a severe verbal or physical altercation" that also targeted A.S. and his family.

4.24   Consequently, Mr. Weber has a track record of receiving multiple infractions from NKA that arose from his abusive treatment of A.S. and his family, as well as inciting other parents of participants to do the same. Yet, these infractions amounted to only a few non-consecutive suspensions, where each suspension lasted only one day if enforced.

4.25   In fact, on one occasion in June 2024 at another NWKA event in Medford, OR, also sanctioned by NKA, officials present at that race still allowed Mr. Weber to attend despite NKA imposing a suspension that would have otherwise banned him from attending.

---

[22] The specific incidents are taken on information and belief.

Complaint for Declaratory and Injunctive
Relief - 17

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.26    While present at this event, Mr. Weber continued to verbally shout disparaging insults that targeted Plaintiffs and other participants. In fact, Mr. Weber has continued to engage in this kind of disrespectful conduct even after being disciplined.

4.27    Mr. Weber is not the only individual who verbally abused A.S. and his family. During the Sima Super Cup in August 2023, Defendant Jimmy Benham allegedly said directly to A.S., "You should think about if you want to be a racer. Everyone hates you, no one wants to race with you."

4.28    Even more disturbingly, after the Sima Super Cup, Mr. Benham also allegedly called other kart racing tracks, sanctioned by NKA, to learn about all other incidents involving A.S. and his family with the intent of banning A.S. and his family because of his behavioral traits that arise from his disabilities.

4.29    On April 5th, 2025, A.S. participated in a kart racing competition at the Tri-Cities Kart Club in Richland, WA, known at the time as the Burly Super Cup. While neither Mr. nor Ms. Speirs expressly requested accommodations for A.S. at the Super Cup, Mr. and Ms. Speirs spoke with NWKA president, Michael Schorn, about how A.S. is autistic and needs reasonable accommodations to participate in kart racing events. These discussions took place in 2023. Since then, Mr. Schorn had been aware that A.S. is autistic and even introduced the Speirs family to another family in McMinnville, OR with an autistic participant in kart

Complaint for Declaratory and Injunctive
Relief - 18

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

racing events to discuss strategies and recommendations to support A.S., considering his disabilities.

4.30   Mr. Schorn is not the only individual for NWKA who has known about the disabilities of A.S., and his need for reasonable accommodations. Other staff in their capacities in NWKA have also known that A.S. had (and still has) disabilities that required him to have reasonable accommodations. On information and belief, a few of these individuals included Catherine Schorn (Infraction Steward), Leilani Filipanko (Sprint Floater), Brittany Williams (Secretary and Grid Director), and Aaron Stanford, (Head Flagger).

4.31   On information and belief, NWKA organized the Super Cup. However, NKA sanctioned the Super Cup and applied NKA rules and regulations. NWKA relied on NKA as the governing body to enforce these rules and regulations during the Super Cup and provided mandatory event insurance at that event.

4.32   On the day of the Super Cup, allegedly after another participant protested, NWKA officials verbally discussed with each other about disqualifying A.S. after A.S. allegedly moving a "scales cone" during a weighing. After officials later held that A.S. properly recorded his weight, and that NWKA officials had historically not punished other racers for this kind of infraction.

4.33   A.S. overheard these conflicting discussions. As an autistic individual who has generally followed the rules, A.S. began to experience severe emotional overwhelm and dysregulation.

4.34   On information and belief, NWKA officials rescinded the disqualification, only to then disqualify A.S. again with only seventeen minutes remaining before the race was scheduled to start. This contradictory and confusing communication – occurring so soon before the race started – only worsened any stress and overwhelm before the race started.

4.35   Under NKA rules, this disqualification led A.S. to begin the Super Cup behind every other participant, which caused more confusion and dysregulation by the time the Super Cup started. Before the race began, Mr. Speirs spoke with Mr. Schorn to protest NWKA's decision to disqualify A.S. Yet, Mr. Schorn denied Mr. Speirs's right to appeal this decision.

4.36   During the race, A.S. spun out of the racetrack and onto a grass area next to the racecourse.

4.37   Immediately after he spun out, A.S. was met by a corner worker who held a large metal hook in his hand.

4.38   Neither A.S. nor his father, who had also participated in kart racing for decades, had ever seen a corner worker with a hook before. On information and belief, other racers acquainted with A.S. and his parents have not seen this kind of

Complaint for Declaratory and Injunctive
Relief - 20

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

hook before. This hook further contributed to the severe overwhelm and fear felt by A.S. that began when he overheard officials disqualifying him.

4.39   The corner worker commanded A.S. to step out of his kart, which he complied.

4.40   A.S. then attempted to push his kart back onto the racetrack to continue racing. On information and belief, cadet class kart racing participants, including A.S., who spin out of the track, are pushed safely back onto the racing surface by the corner workers to continue racing.

4.41   A.S. has spun out before in other races. In all previous races where he spun out and his kart was not disabled, corner workers approached A.S. and safely pushed his kart back onto the racetrack so that he could continue finishing the race.

4.42   During the Junior 1 206 pre-final race at the Burly Super Cup, the corner worker pulled the kart back onto the grass area next to the track and away from the racecourse. This prevented A.S. from finishing the race and is the opposite of what A.S. had faced in previous races where he spun out. On information and belief, the corner worker failed to give any legitimate reason why A.S. could not continue after spinning out.

4.43   The state of severe emotional flooding and stress caused by this series of events was further exacerbated by the presence and actions of the corner worker. In all spin-outs in previous races, the corner worker would immediately push the

Complaint for Declaratory and Injunctive
Relief - 21

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

kart back onto the racetrack. This time, they did not do what he was expecting, but rather the opposite. When this happened, A.S. began raising his voice and reacted by striking towards the corner worker and flailing his arms.

4.44   A second corner worker, carrying a flag in her hand, then attempted to intervene by physically restraining A.S., flooding and overwhelming A.S. even more amidst this triggering provocation.

4.45   In the aftermath of these distressing events, A.S. fell to the ground and cried. The first corner worker told A.S. that "I had to stop you, okay?" However, the corner worker failed to provide any rule or other legitimate reasons for why he prevented A.S. from finishing the race. Eventually, his father, Mr. Speirs, helped A.S. off the racecourse.

4.46   After the incidents, A.S. approached every volunteer and staff that he could find at the Burly Super Cup and apologized for his actions earlier that day.

4.47   On the same day, Mr. Schorn of NWKA verbally advised A.S. and his parents that A.S. could not participate in any of the other races in the Super Cup that day. On information and belief, officials for NWKA considered imposing a three-year ban on A.S. from participating in any other NKA events, and NWKA vice president Chris Worley shared this information with Mr. and Mrs. Speirs only a few hours after the incident.

4.48   Based on the series of abuse faced by A.S. in events organized by NWKA, his parents considered having him no longer race in NWKA Super Cup events, because they have not endured any abuse or bullying at other events outside of these NWKA Super Cup events.

4.49   On May 18, 2025, Defendant NKA issued a "Penalty Notice" against A.S., which Defendant Mr. Janowski signed and included a non-appealable two-year ban from participating in any NKA-sanctioned events, as illustrated in the screenshot below:

---

**PENALTY**

Speirs violated the following Regulations:
- Entering a live course
- Severe verbal or physical altercation

Pursuant to Section 10.10.3.4 of the Regulations, the penalty for each infraction is suspension from all NKA-sanctioned events.

Accordingly, Speirs is hereby suspended from participating in any NKA-sanctioned event until April 17, 2027. On April 18, 2027, Speirs will be automatically reinstated as an entrant in good standing, allowing him to participate in NKA-sanctioned events pursuant to Section 10.3.1 of the Regulations.

This decision is final and non-litigable pursuant to Section 10.1.10 of the Regulations.

---

4.50   This "Penalty Notice" is the first ever disciplinary notice directed at A.S. from NKA or any other kart racing organization.

4.51   The "Penalty Notice" also details a litigation clause that, if enforced, effectively retaliates against those who intend to sue NKA or involve NKA in any legal proceedings, even as a non-party.

Complaint for Declaratory and Injunctive
Relief - 23

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.52   This litigation clause is detailed in the highlighted image below:

**10.1.10 Legal Action.** In consideration of receiving the benefits available to Participants, each Participant agrees that the decisions of NKA officials are non-litigable. This means that by participating in an event, each Participant (and their legal guardian if the Participant is under the age of 18) waives any rights they may have to be a party to or initiate any legal action against the decisions or actions of NKA or anyone acting on their behalf. If a Participant initiates or participates in litigation in violation of these Rules, the Participant is automatically and indefinitely suspended from NKA-sanctioned events. Further, each Participant shall reimburse the NKA Group for all costs of litigation, including, without limitation, travel expenses, attorneys' fees, and costs if the Participant (a) initiates or otherwise causes a member of the NKA Group to be named as a party in a legal proceeding that is not permitted by these rules, or (b) requests or compels a member of the NKA Group to participate in a legal proceeding as a non-party (e.g., responding to a non-party subpoena or giving a deposition).

4.53   If NKA enforces the litigation clause, NKA will impose an automatic and indefinite suspension from NKA-sanctioned events, including events not hosted by NWKA.

4.54   This clause also compels individuals to "pay for *all* costs of litigation" if a participant sues or takes legal action against NKA, names NKA as a party in a legal proceeding, or "requests or compels" NKA or one of its members to appear in a legal proceeding, even if NKA is not a party.

4.55   NKA imposes these penalties despite documented findings from two medical professionals, who have personally known and worked with A.S. for years. Both professionals said that A.S. acted in a way that was a manifestation of his disabilities, and not out of any ill will, malicious intent, or poor sportsmanship from the disqualification imposed on him seventeen minutes before the Super Cup was scheduled to start. One of these professionals also noted that the likelihood of

Complaint for Declaratory and Injunctive
Relief - 24

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

future episodes similar to what happened at the Burly Super Cup is "virtually nonexistent."

4.56   Before filing this Complaint, A.S. and his parents emailed the NKA appeals committee on April 26, 2025 to contest the scope of the two-year ban and seek to reduce the scope to include NWKA Super Cup events only, instead of any kart racing event sanctioned by NKA. A.S. and his parents provided several attachments in support of the appeal, including attachments from two medical professionals that both attested that A.S. was diagnosed with ASD, and that his actions at the Super Cup were manifestations of his disability.

4.57   To date, NKA has not responded to A.S. and his parents. On information and belief, NWKA, including NWKA president Mr. Schorn, proactively contacted other racing leagues to share about the incident with A.S. at the Super Cup and intended to prevent A.S. and his parents from participating at other kart racing tracks outside of  NKA's jurisdiction, including the Greg Moore Raceway in Chilliwack, B.C.

4.58   Counsel for A.S. then mailed a letter to counsel for Defendant NKA and requested a date and time to meet over videoconference regarding reducing the scope of the ban.

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.59   In response, counsel for Defendant NKA expressly declined to meet with counsel for A.S. to further discuss the suspension of A.S. Given NKA counsel's refusal to meet with counsel for A.S., A.S. filed this suit.

## CAUSES OF ACTION

**A. <u>Count I: Title III of the Americans with Disabilities Act: Discrimination Based on Disability, 42 U.S.C. §§ 12182(a)</u>**

5.1   Plaintiffs incorporate by reference the prior paragraphs herein.

5.2   A.S. is a qualified individual with a disability that "substantially limits" the major life activities of speaking and communicating.

5.3   Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the . . . privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[23] A "place of public accommodation" includes "other place[s] of exhibition or entertainment."[24] While the ADA categorizes what counts as "place[s] of public accommodation, the legislative history of the ADA states that the term

---

[23] 42 U.S.C. § 12182(a).

[24] <u>Id.</u> § 12181(7)(C).

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

"public accommodation" shall "be construed liberally" to ensure "equal access" to the many establishments available to the public.[25]

5.4     Defendants NKA and NWKA failed to ensure the "full and equal enjoyment" of the privilege in question: the right to participate in any kart racing events sanctioned by NKA. Defendants violated the ADA by banning A.S. from racing in any NKA-sanctioned events for two years, even beyond the scope of events organized by Defendant NWKA. A.S. engaged in actions that medical professionals who worked closely with A.S. deemed as manifestations of his disabilities that arose from the events that occurred before the start of the Super Cup. These actions did not arise out of any poor sportsmanship, ill will, or malicious intent.

B. **Count II: Title III of the ADA: Discrimination by Failing to Make Reasonable Modifications in Policies, Practices, or Procedures, 42 U.S.C. § 12182(b)(2)(A)(ii)**

5.5     Plaintiffs incorporate by reference the prior paragraphs herein.

5.6     Title III of the ADA necessitates a place of public accommodation to provide reasonable modifications, except for when the place of public

---

[25] See PGA Tour Inc. v. Martin, 532 U.S. 661, 676 (2001).

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

accommodation can show that the accommodations would fundamentally alter the nature of the privilege or advantage provided.[26]

5.7    A.S. seeks a reasonable modification in the form of reducing the scope of the suspension to just NWKA Super Cup events, as opposed to all events sanctioned by NKA entirely. This modification is reasonable considering the unique circumstances of A.S. and his disabilities. This modification does not fundamentally alter the nature of the privileges afforded by NWKA and NKA, nor does this reasonable modification, proposed by A.S. after consulting with A.S. and medical professionals, pose any undue burden or significant difficulty or expense on either Defendant.

C. **Count III: Title III of the ADA: Denial of Participation: 42 U.S.C. § 12182(b)(1)(A)(i)**

5.8    Plaintiffs incorporate by reference the prior paragraphs herein.

5.9    A covered entity discriminates on the basis of disability when the entity denies an individual with a disability "the opportunity . . . to participate in or

---

[26] 42 U.S.C. § 12182(b)(2)(A)(ii).

Complaint for Declaratory and Injunctive Relief - 28

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

benefit from the . . . facilities, privileges, advantages, or accommodations of an entity."[27]

5.10   Defendants discriminated against A.S. on the basis of his disability. Defendants denied A.S. the opportunity to participate in all NKA-sanctioned events, not only events outside of the organizational boundaries of NWKA. A.S. had no reason to know that A.S. needed to expressly request accommodations before the Super Cup.   In 2023, A.S. spoke with NWKA president Mr. Schorn, as well as several other NKA officials.   They discussed the need for reasonable accommodations for A.S. at kart racing events. NWKA was aware that A.S. had disabilities and needed reasonable accommodations. Nevertheless, NWKA and

---

[27] 42 U.S.C. § 12182(b)(2)(A)(ii). In the context of ADA Title II, people with disabilities need not submit a formal request for accommodations when it is obvious that the individual has a disability and cannot enter a public facility. See Bax v. Doctors Med. Ctr. Of Modesto, Inc., 48 F. 4th 1008, 1018 (9th Cir. 2022) (citing Pierce v. District of Columbia, 128 F. Supp. 3d 1250, 269 (D.D.C. 2015) (dismissing a prison facility's belief that they are not obliged at all to provide reasonable accommodations to inmates who have obvious disabilities as "truly baffling as a matter of law and logic")).

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

NKA excluded A.S. from participating in events due to actions that were a manifestation of his disabilities.

### D. **Count IV: Title III of the ADA: Discrimination by Association with an Individual with a Disability, 42 U.S.C. § 12182(b)(1)(E)**

5.11   Plaintiffs incorporate by reference the prior paragraphs herein.

5.12   Title III of the ADA also bans discrimination based on disability through association with an individual with a disability.[28] To show this kind of discrimination under the ADA, plaintiffs must show that they suffered a "specific, direct, and separate" injury from an association with an individual with a disability.[29]

---

[28] 42 U.S.C. § 12182(b)(1)(E).

[29] See, e.g., Huynh v. Bracamontes, No. 5:16-cv-01457-HRL, 2016 U.S. Dist. LEXIS 90443, 2016 WL 3683048, at *5 (N.D. Cal. July 12, 2016) (holding that a loss of companionship between a mother and her daughter with a disability is an "associational discrimination" claim); George v. AZ Eagle TT Corp., 961 F. Supp. 2d 971, 975 (D. Ariz. 2013) (holding that the deprivation of the "full enjoyment" of a shopping center, arising from the shopping center's failure to remove architectural barriers that prevented the plaintiff's son with a disability to patronize the shopping center, is "a separate and distinct injury" that warrants standing); see also id. ("[I]f a non-disabled companion is excluded from the theater because of his

District courts within the Ninth Circuit provide examples of actionable injuries. These include loss of companionship and emotional distress in the form of feeling "anxious, frustrated, embarrassed, conspicuous, unwelcomed and like second class citizens."[30]

_____

or her [or their] association with a disabled individual (for example, no room in the theater for wheelchairs), then the non-disabled companion suffers direct harm to her or her [or their] own independent right to be in the theater because of the association with a disabled person.).

[30] Cf., e.g., Daubert v. City of Lindsay, 37 F. Supp. 3d 1168, 1172 (E.D. Cal. Aug. 11, 2014) (stating that the plaintiff, the great-grandfather of a daughter with a disability, had "a concrete and particular injury separate and distinct from his great-granddaughter's" when the plaintiff alleged that he and his great-granddaughter experienced "difficulty" and felt "anxious, embarrassed, conspicuous, unwelcomed and like second class citizens" after their visit to a city-owned park that was not accessible to people who used wheelchairs, including the plaintiff's great-granddaughter, and how these feelings occurred in acting with the plaintiff's own individual desire to visit the park with the great-granddaughter); Cortez v. City of Porterville, 5 F. Supp. 3d 1160, 1162–63 (E.D. Cal. 2014)

Complaint for Declaratory and Injunctive
Relief - 31

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

5.13   Plaintiffs Mr. Speirs and Ms. Speirs were discriminated against based on their association with an individual with a disability. The ban by Defendant NKA effectively deprives Mr. and Ms. Speirs of the companionship that other parents of participants otherwise enjoy. The companionship for plaintiff A.S. is quite valuable, not just for A.S. himself, but for the assurance that comes with knowing that A.S. is properly supported by those who know him and his needs arising out of his diagnosed disabilities. The deprivation of companionship with A.S. at karting events is discrimination by association under the ADA.

5.14   Mr. and Ms. Speirs themselves experienced significant emotional distress in regard to how NWKA and NKA treated A.S. at the Super Cup, as well as reading and handling the communication from NKA and NWKA that imposed the final decision to ban on A.S. for two years without providing any meaningful

_____

(holding that the plaintiff had standing because the plaintiff, the grandparent of a daughter who used a wheelchair, experienced "difficulty" and felt "anxious, frustrated, and conspicuous" when trying to visit a city-owned sports complex, the feelings of which amounted to feeling deterred from visiting the sports complex and thus, amounting to an injury "separate and distinct" from the granddaughter).

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

opportunity to contest it. NWKA inflicting emotional distress on Mr. and Ms. Speirs is discrimination under the ADA.

E. **Count V: Freedom from Discrimination Based on Disability, Washington Law Against Discrimination (WLAD): Revised Code of Washington, § 49.60.030**

5.15   Plaintiffs incorporate by reference the prior paragraphs herein.

5.16   WLAD guarantees the "right to be free from discrimination because of . . . the presence of any sensory, mental, or physical disability" with the added guarantee of "[t]he right to the full enjoyment of any of the . . . privileges of any place of public resort, accommodation, assemblage, or amusement."[31]

5.17   NKA discriminates against A.S. by failing to ensure the "full enjoyment of" participating in NKA kart races, because NKA justified banning A.S. for two years from participating in any NKA-sanctioned race in response to events that are manifestations of his disability. These manifestations have been corroborated by medical and pediatric professionals who have known A.S. for years. The events that gave rise to this action are not manifestations of any ill will, malicious intent, or poor sportsmanship.

F. **Count VI: Unfair Acts or Practices that Discriminate Based on Disability, WLAD: Revised Code of Washington, § 49.60.30, and Washington Administrative Code (WAC), §§ 162-26-070, 162-26-080, 162-26-140**

---

[31] Id.

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

5.18   Plaintiffs incorporate by reference the prior paragraphs herein.

5.19   As "the 'law against discrimination,'" the Washington State legislature created WLAD to eliminate discriminatory practices against individuals with "sensory, mental, or physical" disabilities.[32]  WLAD enables the Washington State Human Rights Commission to adopt laws to effectuate the purposes of WLAD.[33] These laws are embedded in the Washington Administrative Code (WAC). The WAC details the kinds of unfair discriminatory acts or practices, including, but not limited to:

- Treating an individual with disabilities as "not welcome, accepted, desired, or solicited the same as a nondisabled person";[34]

---

[32] WASH. REV. CODE § 49.60.010 (2024).

[33] Id. ("A state agency is herein created with power with respect to elimination and prevention of discrimination in . . . places of public resory, accommodation, or amusement . . . because of . . . the presence of any sensory, mental, or physical disability . . . and the commission established hereunder is hereby given general jurisdiction and power for such purposes."). "Commission" refers to the Washington State Human Rights Commission. Id. § 49.60.040(3) (2024).

[34] WASH. ADMIN. CODE § 162-26-070(4) (2023).

Complaint for Declaratory and Injunctive Relief - 34

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

- "Segregat[ing] or restrict[ing] a person or deny[ing] a person the use of facilities or services in connection with the place of public accommodation where same service is possible without regard to the disability";[35]

- Failing or refusing "to reasonably accommodate" the known disabilities of an individual "when same service is possible without regard to the disability";[36] and

- "Request[ing] or requir[ing] another person to waive rights or hold anyone harmless as a condition of the use of enjoyment of a place of public accommodation by [an individual with disabilities]."[37]

5.20   Here, Defendants committed unfair practices that violate WLAD. Defendants Mr. Weber and Mr. Benham treated A.S. and his family as unwelcome; Mr. Weber shouted derogatory remarks about A.S. and his parents that caused them to feel unaccepted and unwelcomed at NWKA and NKA races. Mr. Benham also contributed to this exclusion by telling A.S., "Everyone hates you" and "No

---

[35] Id. § 162-26-070(5) (2023).

[36] Id. § 162-26-070(6) (2023).

[37] Id. § 162-26-140(1) (2023).

Complaint for Declaratory and Injunctive Relief - 35

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

one wants to race with you." Mr. Weber's and Mr. Benham's actions have caused (and still causes) lasting anxiety on A.S. and his parents, a consequence that violates the goals of WLAD and WAC.

5.21   Defendant NKA also committed the unfair practice of restricting A.S. and his parents. NKA issued a "Penalty Notice" that unlawfully restricted A.S. and his parents from participating in any NKA-sanctioned events, including events organized by other racing groups besides NWKA. Yet, this "Penalty Notice" arose, again, from actions that were manifestations of the diagnosed disabilities of A.S. The "Penalty Notice" encompasses the use of "facilities" or "services" in connection with NKA, as a national kart racing league. Thus, the "Penalty Notice" infringes on rights afforded to A.S. and his parents under WLAD and WAC.

5.22   Defendants NWKA and NKA also failed to "reasonably accommodate" an individual known to have disabilities. The president of NWKA knew well before the Super Cup in April 2025 that A.S. had disabilities and required reasonable accommodations for his disabilities. Nevertheless, corner workers physically restrained A.S. at the Super Cup for his actions that purely arose out of his known diagnosed disabilities and without any malice. This physical restraint is the opposite of what WLAD and WAC seeks to accomplish: eliminating discrimination based on disability.

Complaint for Declaratory and Injunctive
Relief - 36

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

5.23    Further, Defendant NKA unlawfully restricted the legal rights of A.S. and his family. As a requisite to participate in NKA-sanctioned events under its "Legal Action" rule, NKA required A.S. and his parents to waive "any rights they may have to be a party to or initiate any legal action against the decisions or actions of NKA or anyone acting on their behalf." The "Legal Action" rule also mandated A.S., or his parents, to pay "all costs of litigation" if they involve NKA in any legal proceedings, regardless of whether NKA is a party. These elements of NKA's "Legal Action" clause strips A.S. and his parents from exercising legal rights that are protected by WLAD and WAC.

G. **Count VII: Unfair Practice to Aid, Abet, Encourage, or Incite a Violation of WLAD, WLAD: Revised Code of Washington, § 49.60.220**

5.24    Plaintiffs incorporate by reference the prior paragraphs herein.

5.25    WLAD prohibits individuals from committing unfair practices that discriminate against individuals on the basis of disability. One of these unfair practices is "to aid, abet, encourage, or incite the commission of any unfair practice[s]."[38] "Obstruct[ing] or prevent[ing] any other person from complying" with WLAD is another impermissible unfair practice.[39] The Washington State

---

[38] WASH. REV. CODE § 49.60.220 (2024).

[39] Id.

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

Legislature intends to apply this provision broadly, so that individuals can enforce their rights under WLAD.[40] One of these rights is protection from discrimination based on disability.[41]

5.26 Here, Defendants Mr. Janowski and Mr. Schorn committed an impermissible unfair practice under the RCW, despite having knowledge that A.S. had disabilities. Mr. Janowski authorized imposing the "Penalty Notice" that banned A.S. and his parents from participating in any NKA-sanctioned events, a penalty that arose from the NKA disciplinary committee. On information and belief, Mr. Schorn also proactively contacted other kart racing tracks outside of the jurisdiction of NKA to wrongfully share about the behavior of A.S. and his parents with the intent of having other kart racing leagues ban A.S. and his parents as well. Mr. Janowski also

---

[40] See Jenkins v. Palmer, 66 P.3d 1119, 1121 (Wash. App. 2003) ("RCW 49.60.220, although broad, focuses on conduct that encourages others to violate the WLAD."); id. ("The references to "aid, abet, encourage, or incite" and to "prevent any other person from complying" show that the statute applies only where the actor is attempting to or has involved a third person in conduct that would violate the WLAD.").

[41] WASH. REV. CODE § 49.60.030(1) (2024).

Complaint for Declaratory and Injunctive
Relief - 38

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

knew about the disturbing conduct by Defendants Mr. Weber and Mr. Benham. Yet Mr. Janowski continued to enable Weber's and Benham's conduct. Mr. Janowski imposed mere one-day suspensions on Mr. Weber, one of which was not even enforced, while Mr. Benham received no penalty. These actions support a finding that Mr. Janowski aided, abetted, or otherwise encouraged discrimination that is impermissible under WLAD.

5.27 Defendants Mr. Weber and Mr. Benham also committed an unactionable unfair practice subjected to the RCW. Mr. Weber shouted disparaging statements that encouraged participants to "run [A.S.] off" the track and other unsportsmanlike actions, while Mr. Benham actively gathered information from other kart racing tracks to gain further disparaging information about A.S. and his parents, presumably to further justify having other kart racing tracks, leagues, and other events banning A.S. and his family. These facts also support the finding of unfair practices that violate WLAD under the RCW.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

6.1    That this Court assumes jurisdiction;

6.2    A declaration that NWKA's and NKA's actions and inactions violated A.S.'s civil rights under the ADA and WLAD;

Complaint for Declaratory and Injunctive
Relief - 39

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

6.3     That this Court issue declaratory and injunctive relief ordering NWKA and NKA to reasonably modify the suspension of A.S. to include just the NWKA Super Cup series and not *all* events sanctioned by NKA, in full compliance with the Americans with Disabilities Act, and the WLAD;

6.4     That this Court award reasonable attorneys' fees and costs to A.S., pursuant to 42 U.S.C. § 12205, and RCW 49.60.030(2);

6.5     That this Court awards such additional or alternative relief as may be just, proper, and equitable, including but not limited to damages under WLAD; and

6.6     The right to conform the pleadings to the evidence presented.

RESPECTFULLY SUBMITTED this ___ day of July, 2025.

WASHINGTON CIVIL & DISABILITY ADVOCATE

/s/ *Conrad Reynoldson*                           /s/ *Dustine Bowker*
Conrad Reynoldson, WSBA #48187      Dustine Bowker, WSBA #63263
4115 Roosevelt Way NE, Suite B          4115 Roosevelt Way NE, Suite B
Seattle, WA 98105                                  Seattle, WA 98105
(206) 876-8515                                       (206) 428-3172
conrad@wacda.com                              dustine@wacda.com

LATE KNIGHT LEGAL PLLC

Complaint for Declaratory and Injunctive
Relief - 40

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

*/s/ Paul Boudreaux*
Paul Boudreaux, WSBA #49038
P.O. Box 65367
University Place, WA 98464
(253) 656-4475
lateknightlegal@gmail.com


*Attorneys for Plaintiff*

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172